# COUNTY OF YORK.

GEORGE SIMPSON *versus* SAMUEL W. NORTON, *Appellant.*

<div style="float:right">45  281<br>91  238</div>

A motion for a new trial, on the ground that the verdict is against the weight of evidence, will not be considered by the full Court, unless the report of the evidence is duly authenticated by the Judge who presided at the trial.

Amendments may be allowed at the discretion of the Court, when the cause of action can be perceived and rightly understood, although the declaration is inartificially and defectively drawn; thus, the words "convenient privilege of passing" may be construed to mean convenient *way* or *road*, when, from the whole declaration, such is manifestly the sense in which these words are used.

When a party is allowed to amend, on terms which are accepted by him, the full Court will not subsequently modify those terms, though it should appear that the amendment was unnecessary. Whether the full Court has the power thus to interfere, *quære.*

When, from the papers presented, a subject matter apparently falls within the jurisdiction of the Probate Court, and due proceedings have been had therein, without appeal or objection, the final decree of that Court will be conclusive.

What will constitute due diligence in the search for public records and documents, so as to admit secondary evidence in proof of their contents, will depend upon the circumstances of each particular case.—Thus, where the register of probate testified that he had made search of the records in the case of S. N.; that he found but part of the papers in that case; that he found the files in bad order, in very bad condition; that some of the files were broken open and loose, and that he examined the indexes of the records for the year or two spoken of, without finding the papers desired or reference to the record thereof in the indexes, the Court will admit parol evidence to show the contents of such papers, especially when the transaction occurred many years before.

The construction of a deed, or other instrument in writing, is matter of law, and should be determined by the Court; but when a question of law has been improperly referred to the decision of a jury, their verdict will not be set aside for that cause, if it be apparent that the question has been correctly decided by the jury.

ACTION OF THE CASE to recover damages of defendant for obstructing the plaintiff's right of way to his grist-mill. The

writ is dated May 2, 1854, and returnable before a justice of the peace, from whose judgment the defendant appealed. Plea, general issue, with a brief statement of special matter of defence : — (1.) If plaintiff had any such right of passage as he sets forth, which defendant does not admit, he did not obstruct the same as plaintiff alleges; (2.) that, at the times alleged in plaintiff's writ, he was the owner of certain land situated, &c., between the main road and the grist-mill occupied by plaintiff, and, that he kept open an unincumbered, &c., " a convenient privilege of passing and repassing to and from the mill," &c.; (3.) that plaintiff had no right of way or passage over or across defendant's land, &c.

The trial of the action was commenced at the September term, 1856, before RICE, J. The plaintiff put in his evidence and stopped. Thereupon, the defendant moved the Court to direct a *nonsuit.* The Court, after argument of counsel, ruled that the action could not be sustained upon the evidence.

The plaintiff then moved for leave to amend his writ by adding another count, to which the defendant objected, and, among other reasons, urged that it set out a new cause of action. The Court ruled that the amendment might be made, upon the terms that " the plaintiff shall recover no costs since the entry of the appeal, to and including the present term." EXCEPTIONS were taken by the defendant to this ruling of the presiding Judge, allowing the amendment. The case was then continued, on motion of defendant, to the next January term, thence to the April term, (1857,) when the plaintiff moved to amend his writ by adding an amendment which had been filed at the January term, and of which defendant was notified. The action proceeded to trial, DAVIS, J., presiding, and, after the plaintiff had introduced all his evidence, the defendant moved the Court to direct a *nonsuit,* which motion was argued; and, thereupon, the plaintiff moved for leave to amend his writ again, which was granted against the objection of the defendant. (The last two amendments are descriptive of the way claimed by plaintiff.)

To sustain his case, the plaintiff introduced, —

1. The will of Samuel Norton, and probate proceedings thereon. By the will, after the payment of certain legacies, the testator devised and bequeathed all the residue of his estate to defendant, when he should arrive at the age of twenty-one years. Joseph Weare and John Norton were nominated and appointed executors, who were to have the sole care of the estate until the defendant should arrive at the age of twenty-one years. The will was proved, Nov. 27, 1820.

2. License of Probate Court to the said executors to sell real estate of the testator, issued in May, 1829.

3. The depositions of said executors, to prove that before sale they gave the notice required by law, and, in other respects, complied with the directions contained in said license.

4. The deed of said executors to Moody & al., of the grist-mill, &c., and passage way, the material parts of which are recited in the opinion of the Court.

The defendant objected to the introduction of this deed, because the plaintiff had not proved the authority to convey, and had given no evidence of having taken the oath required by law, before fixing upon the time and place of sale, and had given no evidence of posting notices as the law required; but the Court allowed the deed to be read.

5. Plaintiff then proved the due appointment of George Moody as guardian of the defendant, Nov. 27, 1820.

6. Deed of mortgage from said Moody to Thayer & als., also deeds from said Rice and from Thayer & als., to plaintiff.

The report of the evidence, at the trial, is voluminous; and, as the portions of it bearing most immediately upon the questions determined in the case appear in the opinion of the Court, a further detail of the evidence and testimony is deemed unnecessary.

The verdict was for the plaintiff, and the defendant filed exceptions to the rulings of the presiding Judge, in the admission and exclusion of evidence, and also to instructions given to the jury in matters of law, which rulings and instructions sufficiently appear in the opinion of the Court.

The defendant also filed a motion to set aside the verdict, as being against evidence; the report of the evidence was not authenticated by the presiding Judge, but was certified to be a full and correct report of the evidence by the counsel of both parties.

The questions presented by the two bills of exceptions, and by the motion to set aside the verdict, were argued by

*Bourne,* for the plaintiff, and by

*Tapley,* for the defendant.

The opinion of the Court was drawn up by

RICE, J.— This case is presented on two bills of exceptions, and also upon a motion for a new trial, on the ground that the verdict was against the weight of the evidence in the case. The evidence reported is not duly authenticated by the presiding Judge, as required by law. The motion, therefore, will not be considered.

The first bill of exceptions was allowed and filed at the September term of the Court for the county of York, 1856, at which time the case was partially heard, when the plaintiff asked leave to amend his writ, which was granted on terms, and the action then continued.

To the allowance of the amendment, the defendant excepted, on the ground that the plaintiff therein set out a new cause of action.

Section 10, c. 82, R. S., provides that no process or proceedings in courts of justice shall be abated, arrested, or reversed, for want of form only, or for circumstantial errors or mistakes which by law are amendable, when the person and case can be rightly understood. Such errors may be amended, on motion of either party, on such terms as the Court orders.

This is substantially the same provision as is contained in §§ 9 and 10, c. 115, R. S. of 1841.

The original count in the writ was inartificially drawn, and is very defective. But, on inspection, the cause of action in-

tended to be therein set out, may be perceived and rightly understood.

Thus, it is stated in the original count, that the plaintiff, "in 1854, and long before, and ever since was, and yet is possessed of a certain grist-mill, in said York, and then had and still ought to have a convenient privilege of passing to and from said mill, from the main road on the north-east side of Cape Neddick river, and also of passing to and from a shed near said mill, with horses, wagons, on foot or otherwise, yet the said Norton, contriving injuriously and unjustly to vex the plaintiff, and exclude him from the use of said road, on, &c., piled on said way large quantities of wood," &c.

Now, it is contended that, according to grammatical rules of construction, the words, "said road" and "said way," must refer to the *main road* as their antecedent, and that consequently the obstructions complained of are alleged to have been placed on that road, whereas, in the amended count, the allegation is, that the defendant obstructed a pass-way leading from the main road to the plaintiff's mill.

But when we consider the leading facts set out in the original count, to wit: that the plaintiff was possessed of a mill, and, also, that he had and ought to have a convenient privilege of passing to and from said mill to the main road, it becomes apparent that the words "convenient privilege of passing" are used as tantamount to the words convenient way, or road, and that the words "said road" and "said way" refer to the phrase "convenient privilege of passing," as their antecedent, and not to the words *main road*, which, like the word *mill*, is referred to as a monument to indicate one of the *termini* of the way leading to the mill.

That such is the true import of the language is apparent from the declaration taken as a whole. By reference to the executors' deed, under which the plaintiff holds, the same facts will also appear, as language is used therein almost precisely the same as that used in the original declaration to designate a pass-way, or right of way from the plaintiff's mill to the main road.

Other parts of the original declaration are also defective, but, within the principle of *Pullen* v. *Hutchinson*, 25 Maine, 249, are clearly amendable.

These exceptions are therefore overruled.

The plaintiff now claims that he should be relieved from the terms imposed by the Court when the amendment was allowed. These terms do not appear to have been very onerous. If they were so, it was optional with him whether he would accept them and amend, or try out his legal rights on his original declaration. We see no reason to modify the rulings of the presiding Judge, if it were competent for us to do so at this time.

The second bill of exceptions was filed and allowed at the April term of the Court, 1857, when the case was finally tried and a verdict rendered.

The plaintiff derives his title to his mill, and the right of way in question, under an executors' deed from Joseph Weare, Jr., and John Norton to George Moody and Alexander Rice, Jr., dated July 5, 1829. Weare and Norton were the executors of the last will of Samuel Norton, deceased, who was the father of the defendant.

The defendant objected to the introduction of the deed aforesaid, on the ground that it did not appear by competent evidence that the executors were authorized to convey the real estate of their testator thereby.

These objections are twofold. First, that the Judge of Probate, who granted the license under which the sale was made, had no jurisdiction of the subject matter, and secondly, that there is no competent evidence to show that the executors complied with the directions of the Court preliminary to the sale.

The objection founded on the want of jurisdiction originates in the allegation that the debts, for the payment of which the sale was decreed, were contracted by the executors long after the death of the testator, and for objects not legitimately pertaining to the settlement of his estate.

To this objection it is sufficient to reply that the case be-

fore us discloses no such facts. The principal item in the account, a copy of which is in the case, appears to be the balance of a former account. Of what that former account consisted, does not appear.

The case and the subject being apparently within the jurisdiction of the Probate Court, and due proceedings having been had thereon, without objection or appeal, the final decree of that Court is conclusive, so far as this objection is concerned.

The next objection to the authority of the executors was, that the plaintiff had given no evidence of their having taken the oath required by law, before fixing upon the time and place of sale, and had given no evidence of posting notices as required by law.

To meet these specific objections, the plaintiff called the present register of probate, who testified that "he had made search of the records in the case of Samuel Norton; that he found no bond on the license of 1829, but found an earlier bond; that he found no perpetuation of notice, original or record; that he found some files in bad order, some in very bad condition. He could not give the date of the files found in bad order. Some of the files were broken open, and some of the files were loose. Accommodations were very limited. He did not examine all the records and files of the court for these papers. Examined only the files for 1829. Have not made an extended search among the records. Made a search among the papers for a year or two connected with the time of the proceedings of sale. Only examined the indexes for the year or two spoken of."

On cross-examination, the witness stated, "for the perpetuation of notice, I looked in the file when the license was granted. This is the only file I looked in at all, for the perpetuation."

The Court thereupon admitted, against the objection of the defendant, parol evidence tending to show that notice had been given by the executors according to law, and also that they had duly taken the oaths prescribed by the statute.

Upon this evidence, the Court instructed the jury that they

might, by reason of the evidence relative to the records in the probate office, from the lapse of time, exceeding twenty years, and the acquiescence of the defendant since the conveyance of Norton & al. to Moody & al., infer that the oath necessary to be taken by said Norton and Weare, jr., and the notices of sale, were all seasonably and correctly taken and made, and that all the acts necessary to make a valid conveyance had been done and performed as required by law.

The degree of diligence that is required to establish the destruction or loss of a written instrument, or to prove the non-existence of a record, will depend much upon the circumstances of the case. When the transaction to be established is of ancient date, and only one appropriate place of deposit exists for the preservation of such instrument or record, and there is no suggestion that they may be found elsewhere, and the appropriate place of deposit is carefully examined without success, an inference of irrecoverable loss or destruction would thereupon arise, while, if the transaction were of recent date, such an inference might not be authorized, though the surrounding facts were of similar character.

Although, in this case, the search for the missing papers and records does not appear to have been of a very extended character, yet, when we reflect that it referred to a transaction which transpired nearly thirty years ago, and that the files relating to the estate were found in bad order, but containing the most important papers in the case, and that the indexes examined were those which referred to the records of the year when the case was before the Probate Court, the evidence of the loss or non-existence of the missing papers and records was such as would authorize a resort to evidence of an inferior character.

But the evidence produced, independent of the parol testimony, was sufficient to authorize the instruction of the Court upon this point. The will of the testator; the qualification and acts of the executors under that will; the license to sell the real estate; the return of the doings of the executors under that license, and the approval thereof by the Court;

when considered in connection with the fact, that under the deed of the executors, the estate in question has been held by the plaintiff or his grantors for a period of nearly thirty years, under the eyes of the defendant, without objection from him, and that during a large portion of that time he had been under no legal disability, but in a condition to assert and maintain his rights to the estate in controversy, if any he had, would, with the testimony of the register of probate, above recited, fully authorize the presumption that all the preliminary acts required by the statute, to constitute a valid sale, had been performed. The rulings of the Court on this part of the case, are well sustained by the case of *Battles* v. *Holley,* 6 Maine, 145, and the other cases cited by the counsel for the plaintiff.

The Court further instructed the jury that, " as to the extent of the way declared on, the plaintiff must, under the pleadings in the case, prove his way as laid in width and extent. That they would take the deed, and if they found the plaintiff's title good under that, determine, from that what right of way was given, how extensive it was, its width, and whether or not the plaintiff had a right to travel the whole distance from the road to the mill with horses, teams and wagons, or whether he was confined to the use of said way in this manner to the place where the old shed stood."

The deed, under which the plaintiff claims title, is an instrument in writing. Its construction was matter to be determined by the Court and not by the jury. But, when a question of law is improperly submitted to the determination of a jury, the verdict will not be disturbed for that cause, if it be apparent that the question thus submitted has been correctly decided by the jury.

The executors' deed, after describing the mill, dam, &c., proceeds thus : " together with a convenient privilege of passing and repassing to and from said mill from the main road on the north-east side of said river, also the privilege of passing to and from said shed standing on said premises, with teams, horses, wagons or otherwise."

The privilege herein granted, consists, it will be perceived, of two parts.  First, of a privilege of passing and repassing to and from said mill from the main road, on the north-east side of said river, and, second, of passing to and from said shed standing on said premises, with teams, horses, &c.

From the terms of the deed these privileges or easements, would seem to be entirely distinct and independent of each other, and designed for different purposes.  But, from the evidence reported and from the statements in the arguments of counsel, we infer that the way or privilege first granted and used, extended from the mill to the main road, passing directly by the shed, and that the privilege of passing to and from the shed, as used, was over a portion or the whole of the way used from the main road to the mill.  But whether the privilege of passing with teams, &c., to and from the shed extended from the mill or the main road to the shed, or from both points, does not appear in the deed, nor does the deed define the location nor width of the way from the main road to the mill, or to the shed, either by measure or monuments.

In determining the rights of parties to a contract in writing, the primary object is to ascertain their intention.  That intention is to be sought from the language used by them in the instrument itself.  If, however, there is such uncertainty, or ambiguity in the language used, as to render it impracticable to ascertain the intention of the parties to the instrument, then, for that purpose, recourse may properly be had to their situation at the time of the contract, and the facts and circumstances surrounding and connected with the transaction which is the subject of controversy.

The principal subject of grant in the deed of the executors is a grist-mill, located upon the land of the testator at a distance from the highway or main road.  Connected with this mill, and necessary to its beneficial use, is the privilege of passing therefrom to the main road.  Now what would constitute a convenient privilege of passing, within the meaning of the parties, not being defined in the deed, is a matter of fact to be found by the jury.  To determine that question,

they would be authorized to ascertain, from evidence aside from the deed, not only what description of way would be convenient for the purposes of the grant, but also to ascertain the character of the way, which actually existed, if any, at the time of the grant, as indicating what the parties then understood to be a convenient way. The intention of the parties being thus ascertained, the law would so construe the deed as to carry that intention into effect. Such is the general principle applicable to this class of cases, and such must have been the result under the first clause referred to, had it stood alone. But the introduction of the second clause, giving the authority to pass with teams, &c., being admitted by the parties to cover some portion or the whole of the same location, must be taken as a limitation upon the first clause, otherwise the second clause is wholly meaningless. It is therefore apparent, that under the first clause, the grantors did not intend to give the right of way from the road to the mill, with teams, &c.

Hence arises a necessity for a construction of the second clause, " also a privilege of passing to and from said shed, standing on said premises, with teams," &c. From what point, did the grantee, under this clause of the deed acquire the right of passing to the shed ? Upon this point the deed is silent. Resort, therefore, must be had, as in the former case, to the situation of the parties and the circumstances surrounding the case, to aid in the construction. What would the convenient and beneficial use of the mill require ? What portion of the way was actually in use at the time of the conveyance ? These are pertinent inquiries to be answered by the jury, and upon the answers which they may return would depend, in a great measure, the true construction of this clause in the deed.

Now, whether the defendant has suffered by the error of the Judge in submitting to them the determination of a question of law, or rather, as it is in this case, under the circumstances, a question of law and fact, will depend upon the

rules which were laid down by the Court for their direction in the examination of that question.

Upon this point the Court instructed the jury, that if they should find the title of the plaintiff good under the deed, that where the grant, as in this case, did not set out the way by metes and bounds, they would, in determining the extent of the way, and the character of the use granted, look to the evidence of the use of the same before and at the time of the conveyance, and, although such use was not conclusive evidence of the extent of the grant, yet, such evidence was important to determine the width and extent of the way granted, and also the particular use of it, whether on foot or otherwise, in whole or in part.

This rule, though not covering the whole ground of ligitimate inquiry on the part of the jury, is undoubtedly correct, as far as it goes, and there seems to have been no desire for additional instructions upon this point, nor is there any suggestions that the jury were too much restricted by the Court in their inquiries as to what would constitute a convenient privilege of passing under either clause of the deed.

A part of the instructions of the Court already referred to, became important in this connection, to. wit: " that the plaintiff must, under the pleadings in the case, prove his way as laid in width and extent."

The plaintiff, in his writ, claimed a right of way from the main road to the mill, or to a post near the mill, one rod and one-tenth of a rod in width, to be used by horses, wagons, and on foot.

Under all the instructions, the jury must have found that the plaintiff's convenient privilege of passing, gave him an easement, or right of way, not only for persons on foot, but for horses, teams, &c., from the main road to the mill, and that such way was at least one and one-tenth rods wide. If there be error in the rule thus laid down, it is error of which the defendant should not complain, for it imposes upon the plaintiff the burden of proving his whole case, the whole extent of his alleged injury, or wholly fail in his suit.

On the questions of adverse possession or prescription, as well as to this rule of damages, we think the defendant has no cause of complaint. The rulings were not in conflict with the cases cited by counsel for defendant.

For these reasons the motion and exceptions must be overruled, and judgment go upon the verdict.

TENNEY, C. J., APPLETON, CUTTING, MAY, and DAVIS, J. J., concurred.